IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONSTAR MORTGAGE LLC,

        Plaintiff,

v.

H. JEROME DECKER, WEST COAST
BANK, ASSET SYSTEMS INC.,
AMERICAN EXPRESS CENTURION
BANK, QUOIN DESIGN LLC, MARINA
ELAINE DECKER, and OCCUPANTS OF
THE PROPERTY,

        Defendants.

3:13-cv-01793-PK

FINDINGS AND
RECOMMENDATION

---

H. JEROME DECKER,

        Counter-Claimant,

v.

NATIONSTAR MORTGAGE LLC,

        Counter-Defendant.

---

Page 1 - FINDINGS AND RECOMMENDATION

H. JEROME DECKER,

                Third-Party Plaintiff,

v.

AURORA BANK, FSB, AURORA
COMMERCIAL CORP., AURORA LOAN
SERVICES LLC, and JOHN AND JANE
DOES 1-20,

                Third-Party Defendants.

---

PAPAK, Magistrate Judge:

      Plaintiff Nationstar Mortgage LLC ("Nationstar") filed this judicial-foreclosure action seeking to foreclose on property owned by H. Jerome Decker. Decker thereafter filed a counterclaim against Nationstar and a third-party complaint against Aurora Bank, FSB ("Aurora Bank"), Aurora Commercial Corp., and Aurora Loan Services LLC (collectively, the "Aurora defendants"), alleging a claim for common-law fraud. Now before the court is Nationstar and the Aurora defendants' motion to dismiss (#17-1) Decker's counterclaim and third-party complaint or, in the alternative, motion to strike (#17-2) paragraph 58 of Decker's counterclaim and third-party complaint. For the reasons set forth below, defendants' motion to dismiss should be granted and Decker's counterclaim and third-party complaint should be dismissed with prejudice, and defendants' motion to strike should be denied as moot.

## FACTUAL BACKGROUND

      In 1994, Decker purchased a home located in Happy Valley, Oregon. Decker's Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint ("Counterclaim and Third-Party Complaint"), #7, ¶ 36. In 2003, Decker refinanced the property and signed a promissory note in

Page 2 - FINDINGS AND RECOMMENDATION

favor of SIB Mortgage Corp. for $1,155,000.00. *Id.* ¶ 37; *see also* Ex. 2, Counterclaim and Third-Party Complaint, #7-2, at 1-5. At the same time, Decker executed a deed of trust. Complaint for Judicial Foreclosure of Real Property, #1-1, ¶ 10. Sometime after Decker signed the promissory note, Aurora Bank became the loan servicer. Counterclaim and Third-Party Complaint, #7, ¶¶ 39-40.

In 2008, Decker began falling behind on his mortgage payments and, by October 2009, he was four payments behind. *Id.* ¶¶ 47-48. On October 7, 2009, Decker "sought the protection of Chapter 7 of the Bankruptcy Code." *Id.* ¶ 49. During the bankruptcy, Decker indicated to Aurora Bank "that he wanted to keep the home." *Id.* ¶ 51. In response, Aurora Bank told Decker that he would qualify for a loan modification if he made six payments of $6,110.00. *Id.* ¶ 53-54. At the time Aurora Bank made this statement, it "knew that Decker's loan could not be modified." *Id.* ¶ 57. Between October 2009 and March 2010, Decker made the six payments. *Id.* ¶ 54. Throughout this period, Decker spoke with Aurora Bank via telephone on approximately twenty-eight occasions. *Id.* ¶ 56. During these conversations, Aurora Bank represented to Decker that: (1) he needed "to make [the] six payments to make sure he had the ability to pay"; (2) "if he made the payments he would qualify for a loan modification"; (3) "any late fees or late payments would be added to the end of the loan"; (4) "the financial information he provided qualified him for a loan modification"; (5) "going into a Chapter 7 Bankruptcy would not affect his qualifications for the loan modification so long as he made it clear he wanted to retain the house and had his attorney write to the company so they could talk to him"; and (6) "once he made his fifth payment[, Aurora Bank] would assign him a loan specialist to put the permanent loan modification in place." *Id.* At the time Aurora Bank made these statements, it "knew that

Page 3 - FINDINGS AND RECOMMENDATION

Decker's loan could not be modified." *Id.* ¶ 57. On various occasions between October 2009 and March 2010, Decker, on his own or through an attorney, mailed or faxed materials relevant to evaluating his loan modification to Aurora Bank. *Id.* ¶¶ 59-61. Aurora Bank, however, told Decker that it did not receive the materials he sent. *Id.* ¶ 62. In March 2010, after Decker made the six payments, Aurora Bank informed Decker that his loan modification had been denied because "he lacked all the paperwork necessary to process the modification." *Id.* ¶ 63.

After it denied his request for a loan modification, Aurora Bank continued to contact Decker and tell him that, if he made six more payments, he would again be considered for a loan modification. *Id.* ¶¶ 64-68. During these conversations, Aurora Bank told Decker that "it could work with him, even though he had been in bankruptcy," that a loan modification "was a viable option available to him to keep his home," and that "its goal was to keep him in the house over the long term." *Id.* ¶¶ 66-68. Decker expressed some reluctance to beginning the loan-modification process again, but Aurora Bank "assured him that it had improved its processes." *Id.* ¶ 67. Based on Aurora Bank's representations, Decker again began making payments on the loan. *Id.* ¶ 69. After Decker began making payments, Aurora Bank sent Decker a letter stating that, "[b]ased on [his] performance under the payment arrangement, [Aurora Bank] would like to offer [him] a more permanent foreclosure alternative option." Ex. 1, Counterclaim and Third-Party Complaint, #7-1, at 1.[1] Aurora Bank went on to state that it would review his loan once it received all the necessary paperwork. *Id.* at 1-2. Thereafter, Aurora Bank repeatedly requested that Decker send financial information necessary to determine if he qualified for a loan

---

[1] In his counterclaim and third-party complaint, Decker alleges that Aurora Bank sent the letter. The letter, however, states that it is from "Aurora Loan Services." The relationship between the entities is not clear.

Page 4 - FINDINGS AND RECOMMENDATION

modification. *Id.* ¶ 71. Although Decker sent the requested information, Aurora Bank told Decker that it did not receive the documents. *Id.* ¶ 72. On May 5, 2011, Aurora Bank informed Decker that "he had been declined for a loan modification based on the fact that his house payments were too high compared to his income. This was a fact [Aurora Bank] would have known instantly upon reviewing Decker's income statements back in October of 2009." *Id.* ¶ 77. After Decker was again rejected for a loan modification, the Aurora defendants told "Decker that his house was in foreclosure when it was not." *Id.*

On March 6, 2012, Nationstar purchased all of the assets of Aurora Bank and Aurora Loan Servicing LLC.[2] *Id.* ¶ 41. Nationstar purchased the assets "at a steep discount." *Id.* "In the purchase agreement, [Nationstar] agreed to continue using the phone numbers, the computer systems, the locations and the personnel" of Aurora Bank and Aurora Loan Servicing LLC. *Id.* ¶ 42. At some point, Decker's promissory note was purportedly endorsed and delivered to Nationstar along with the deed of trust. Complaint for Judicial Foreclosure of Real Property, #1-1, ¶ 12. The assignment of the deed of trust was recorded on January 17, 2013. *Id.* ¶ 14.

## PROCEDURAL HISTORY

On August 2, 2013, Nationstar filed a complaint in the Circuit Court for the County of Clackamas, seeking a judicial foreclosure of Decker's home. On October 8, 2013, Decker removed the case to this court on the basis of diversity of citizenship. On December 23, 2013, Decker filed the counterclaim and third-party complaint, alleging a claim for common-law fraud against Nationstar and the Aurora defendants. On February 26, 2014, Nationstar and the Aurora

---

[2] It is not clear whether Aurora Loan Servicing LLC is the same entity as Aurora Loan Services LLC, the defendant named in Decker's third-party complaint.

Page 5 - FINDINGS AND RECOMMENDATION

defendants filed the instant motion seeking dismissal (#17-1) of Decker's counterclaim and third-party complaint or, in the alternative, requesting that the court strike (#17-2) paragraph 58 of Decker's counterclaim and third-party complaint. On March 19, 2014, Decker filed a resistance (#20).[3] On April 7, 2014, Nationstar and the Aurora defendants filed a reply (#21). On May 12, 2014, the court heard oral argument on the motion. The matter is fully submitted and ready for decision.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true

---

[3] I note that, pursuant to Local Rules 6 and 7-1(e), Decker's resistance was due on March 17, 2014. Although Decker's resistance is untimely, I shall nevertheless consider it. I also note that Decker lists New Castle Investment Co., Inc. and Nationstar Mortgage Holdings Inc. as third-party defendants in the caption of his resistance. These entities are not named in Decker's counterclaim and third-party complaint. Because they are not parties to the instant action, I shall disregard any reference to them. Decker also lists Nationstar as a third-party defendant in the caption of his resistance. Nationstar, however, is a counter-defendant, not a third-party defendant.

Page 6 - FINDINGS AND RECOMMENDATION

and construe them in the light most favorable to the nonmoving party. *Kearns v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## DISCUSSION

At the outset, I note that Decker's counterclaim and third-party complaint is far from a model of clarity. For instance, Decker asserts that jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), which provides a civil remedy for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Decker, however, does not allege a RICO claim or any other federal claim; rather, his sole claim is for common-law fraud. Moreover, I note that Decker names Aurora Bank, Aurora Commercial Corp., and Aurora Loan Services LLC as third-party defendants but does not explain the relationship between these three entities or what role each of these entities played in the alleged fraud.[4] Decker's resistance to the motion to dismiss adds further confusion by, for example, alleging conduct by a previously unnamed entity, Quality Loan Services, without explaining its relationship to Nationstar or any of the third-party defendants. *See* Decker's Resistance to Motion to Dismiss, #20, at 7, 12 (alleging that Quality Loan Services sent him a copy of the promissory note that differs from the copy attached to Nationstar's complaint for judicial foreclosure). Finally, Decker pleads a single claim for

---

[4] One possible reading of the caption of the case on page one of Decker's counterclaim and third-party complaint is that Aurora Commercial Corp. is the "successor-in-interest" to Aurora Bank. *See* Counterclaim and Third-Party Complaint, #7, at 1 (listing as defendants "AURORA BANK, FSB, a Colorado corporation and its successor-in-interest, AURORA COMMERCIAL CORP, a Delaware corporation"). Decker, however, does not allege any facts to support a successor-in-interest relationship between Aurora Commercial Corp. and Aurora Bank and, rather, alleges that Nationstar is the successor-in-interest to Aurora Bank.

Page 7 - FINDINGS AND RECOMMENDATION

common-law fraud but his factual allegations suggest that he is asserting two claims for fraud—one based on the Aurora defendants' alleged misrepresentations during the loan-modification process and the other based on Nationstar's filing of the complaint for judicial foreclosure. At oral argument, Decker clarified that he is alleging a single claim for fraud and that Nationstar's filing of the allegedly fraudulent note is not a separate fraud claim but, rather, a continuation of the earlier fraud involving the Aurora defendants. With this in mind, I shall now consider Nationstar and the Aurora defendants' motion to dismiss, beginning with their argument that Decker's fraud claim is untimely.

### A.     Statute of Limitations

Nationstar and the Aurora defendants first request that the court dismiss Decker's fraud claim on the basis that it is time-barred. Specifically, they argue that the statute of limitations for a fraud claim in Oregon is two years and that Decker should have been aware of the alleged fraud no later than May 5, 2011—the date that he learned that he had been declined for a loan modification for the second time. Because Decker did not file the counterclaim and third-party complaint until December 23, 2013, more than two years after he should have discovered the fraud, Nationstar and the Aurora defendants contend that Decker's fraud claim must be dismissed on the basis that it is time-barred.

In his resistance, Decker first argues that the question of when he should have been aware of the fraud cannot be determined as a matter of law at the motion-to-dismiss stage. Decker further argues that he did not discover the fraud until Nationstar filed the complaint for judicial foreclosure, along with an allegedly fraudulent promissory note, on August 2, 2013, and, thus, he filed his fraud claim well within the two-year limitations period. Finally, Decker argues that he

Page 8 - FINDINGS AND RECOMMENDATION

has pleaded a "continuing tort"—that is, the Aurora defendants' misrepresentations during the loan-modification process was part of a larger fraudulent scheme that "culiminat[ed]" with Nationstar's filing of the complaint for judicial foreclosure on August 2, 2013. Decker's Resistance to Motion to Dismiss, #20, at 6.

Pursuant to Oregon Revised Statute Section 12.110(1), an action for fraud must be filed within two years of the date the plaintiff knew or should have known of the fraud. Or. Rev. St. § 12.110(1); *Mathies v. Hoeck*, 284 Or. 539, 542, 588 P.2d 1, 2-3 (Or. 1978); *see also Rice v. Rabb*, 354 Or. 721, 725, 320 P.3d 554, 556-57 (Or. 2014) ("Under the discovery rule, the period of limitations is deemed to have commenced from the earlier of two possible events: '(1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed.'" (citation omitted)).

> Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis. First, it must appear that [the] plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry . . . .' If [the] plaintiff had such knowledge, it must also appear that 'a reasonably diligently inquiry would disclose' the fraud.

*Mathies*, 284 Or. at 542-43, 588 P.2d at 3 (internal citations omitted). Ordinarily, the question of when a plaintiff should have discovered an injury is a question of fact; however, a court may decide the issue as a matter of law if "the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have known the critical facts at a specified time." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 333, 297 P.3d 1287, 1295 (Or. 2013); *accord Mathies*, 284 Or. at 543, 588 P.2d at 3.

Page 9 - FINDINGS AND RECOMMENDATION

In this case, Decker alleges that Aurora Bank made a number of misrepresentations during the loan-modification process, beginning in October 2009 when it first told him that he could qualify for a loan modification. After Decker made a total of twelve or thirteen payments that he was not obligated to make, Aurora Bank declined Decker's second application for a loan modification on May 5, 2011. In its letter, Aurora Bank stated that Decker "had been declined for a loan modification based on the fact that his house payments were too high compared to his income." Counterclaim and Third-Party Complaint, #7, ¶ 77. Decker contends that "[t]his was a fact [Aurora Bank] would have known instantly upon reviewing Decker's income statements back in October of 2009." *Id.* Under these facts, "the only conclusion that a reasonable trier of fact could reach" is that Decker should have been aware of the alleged fraud no later than May 5, 2011. *Doe I*, 353 Or. at 333, 297 P.3d at 1295. At the time his second application for a loan modification was denied, Decker was aware that: (1) he had given Aurora Bank his income statements in October 2009; (2) thereafter Aurora Bank represented on numerous occasions that he could qualify for a loan modification; (3) he made payments in reliance on Aurora Bank's representations that he could qualify for a loan modification; and (4) he was denied a loan modification for the purported reason that he had insufficient income. This was enough to put Decker on notice of the fraud and, thus, the statute of limitations began to run on May 5, 2011.

Decker's arguments to the contrary are without merit. First, Decker argues that he did not discover the fraud until Nationstar filed the allegedly fraudulent promissory note on August 2, 2013, in connection with its complaint for judicial foreclosure. Although Decker contends that the promissory note is fraudulent on its face, I have compared the promissory note Decker states that he received in December 2010 and the promissory note Nationstar filed with the complaint

Page 10 - FINDINGS AND RECOMMENDATION

for judicial foreclosure. Other than the additional endorsements on the last page of the promissory note that Nationstar filed, there are no discernable differences between the two notes and Decker fails to explain how the additional endorsements render the promissory note that Nationstar filed fraudulent on its face. Significantly, even if I were to accept Decker's argument that the promissory note attached to the complaint for judicial foreclosure is fraudulent, Decker fails to explain how the filing of this note caused him to discover that the Aurora defendants' statements, made nearly two-and-a-half years earlier, were false.

Second, Decker's contention that he has pleaded a "continuing tort"—that is, he "has pleaded a series of steps which inextricably led to the attempted foreclosure filed against him on August 2, 2013," Decker's Resistance to Motion to Dismiss, #20, at 6—is likewise without merit. "[A] series of discrete acts, even though connected in design or intent, is not a continuing tort." *Richer v. Poisson*, 137 Or. App. 157, 160, 903 P.2d 932, 934 (Or. Ct. App. 1995) (citing *Davis v. Bostick*, 282 Or. 667, 674, 580 P.2d 544, 548 (Or. 1978)). Assuming that the Aurora defendants made misrepresentations during the loan-modification process, those misrepresentations were discrete acts that caused discrete harm—namely, that Decker made twelve to thirteen payments that he was not obligated to make. Under these circumstances, there is no basis from which to find a continuing tort.

In sum, Decker should have been aware of the alleged fraud no later than May 5, 2011. Because he did not file the counterclaim and third-party complaint until December 23, 2013, Decker's fraud claim should be dismissed as time-barred.[5]

---

[5] As noted above, Decker stated at oral argument that he was not alleging a separate fraud claim based on Nationstar's filing of the complaint for judicial foreclosure; rather, Decker explained that the filing of the complaint, along with the allegedly fraudulent promissory note,

Page 11 - FINDINGS AND RECOMMENDATION

B.     **Nationstar and the Aurora Defendants' Remaining Arguments**

Given my conclusion that Decker's fraud claim is time-barred, I find it unnecessary to address Nationstar and the Aurora defendants' remaining arguments, including that Decker failed to state a claim to relief, that he failed to plead his claim with the specificity required under Federal Rule of Civil Procedure 9(b), and that he failed to plead facts supporting his request for punitive damages. Moreover, given my recommendation that Nationstar and the Aurora defendants' motion to dismiss should be granted, their alternative request to strike paragraph 58 of the counterclaim and third-party complaint should be denied as moot.

## CONCLUSION

Based on the foregoing, Nationstar and the Aurora defendants' motion to dismiss (#17-1) should be granted and their alternative motion to strike (#17-2) should be denied as moot. In light of my findings above, amendment of the counterclaim and third-party complaint would be futile and, therefore, unwarranted under Federal Rule of Civil Procedure 15(a). Accordingly, the district court should dismiss the counterclaim and third-party complaint with prejudice and without leave to amend.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

---

was significant only insofar as it was the event that caused him to discover the earlier fraud involving the Aurora defendants and, moreover, was evidence of a "continuing tort." Nevertheless, because Decker's counterclaim and third-party complaint could conceivably be read to plead a second fraud claim relating to Nationstar's filing of the complaint for judicial foreclosure, I note that any such fraud claim, while not time-barred, would also be subject to dismissal, as Decker has not pleaded any facts suggesting that he relied on any fraudulent statement in the complaint or the attached promissory note. *See Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351-52, 258 P.3d 1199, 1209 (Or. 2011) (listing elements of a fraud claim).

Page 12 - FINDINGS AND RECOMMENDATION

are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 14th day of May, 2014.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION